1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LEXINGTON INSURANCE COMPANY,              No.  2:15-cv-00861-KJM-EFB
     a Delaware Corporation,
12
                    Plaintiff,
13                                             ORDER

14          v.

15   ENERGETIC LATH & PLASTER, INC., a
     California Corporation; ENERGETIC
16   PAINTING AND DRYWALL, INC., a
     California Corporation; ROBERT CIMINI,
17   an individual; GAIL CIMINI, an
     individual; and DOES 1 through 20,
18   inclusive,

19                   Defendants

20   AND RELATED COUNTERCLAIMS

21

22          This matter is before the court on plaintiff and counter-defendant's motion to

23   dismiss the counter-complaint of defendants and counter-plaintiffs Robert and Gail Cimini.  (ECF

24   No. 10.)  Plaintiff also moves to strike the Ciminis' affirmative defenses and requests for

25   attorneys' fees and punitive damages.  (*Id.*)  Defendants oppose the motions.  (ECF No. 25.)  The

26   court submitted the matters without oral argument.  As explained below, the court GRANTS in

27   part and DENIES in part each motion.

28

                                              1

1    I.    BACKGROUND

2              Plaintiff Lexington Insurance Company (Lexington) commenced this declaratory

3    relief action in April 2015.  (ECF No. 1.)  Lexington seeks several declarations to clarify disputed

4    rights and obligations under a number of insurance policies issued to defendants Energetic Lath &

5    Plaster, Inc. (ELP) and Energetic Painting and Drywall, Inc. (EPD), collectively referred to as

6    "Energetic."  (*Id.*)   Defendants Robert and Gail Cimini, as assignees of Energetic, answered on

7    May 22, 2015, and alleged thirty-one affirmative defenses.  (Answer, Third-Party Complaint,

8    Counterclaim (CC), ECF No. 9.)  Defendants also filed a counter-complaint, alleging five claims

9    against Lexington: 1) declaratory relief; 2) breach of contract; 3) breach of the duty of good faith

10   and fair dealing; and 5) enforcement of judgment.  (*Id.* at 51–54.)  On June 15, 2015, Lexington

11   moved to dismiss the Ciminis' counter-claims against it as well as to strike the affirmative

12   defenses, along with the requests for attorneys' fees and punitive damages.  (Pl.'s MTD at 1–2,

13   ECF No. 10.)

14              Lexington issued a number of general liability insurance policies to Energetic

15   between June 2004 and July 2010.  (Compl. ¶¶ 9–24, ECF No. 1.)  These policies each contain a

16   $25,000 self-insured retention clause (SIR).  (*Id.* ¶¶ 23–24.)  This clause provides that Lexington

17   has no duty to investigate any "occurrence, claim or suit" until the insured has satisfied the SIR.

18   (*Id.* ¶ 24.)  Between March and May 2006, Energetic entered into contracts with Silverstar, a

19   Nevada home developer, to perform construction work at Energetic's Renaissance at Montreux

20   home development in Reno, Nevada.  (*Id.* ¶¶ 26–29.)  The Cimini Family Trust, represented here

21   by Robert and Gail Cimini, purchased a home in the Montreux development in September 2009.

22   (*Id.*  ¶ 28.)  On July 1, 2011, the Ciminis served Silverstar with a Chapter 40 Notice of

23   Compliance as provided by Nevada Revised Statute (NRS) section 40.645,[1] which alleged their

24   _____

25            [1] Under Nevada law, before a claimant brings suit for a construction defect against a
     contractor, subcontractor, supplier or design professional, a claimant must give written notice to
26   the contractor.  Nev. Rev. Stat. Ann. § 40.645(1)(a).  The notice must, among other things,
     "[i]dentify in specific detail each defect, damage and injury to each residence or appurtenance
27   that is the subject of the claim, including, without limitation, the exact location of each such
     defect, damage and injury" and "[d]escribe in reasonable detail the cause of the defects if the
28   cause is known and the nature and extent that is known of the damage or injury resulting from the

1    home had various construction defects, including defective stucco and drywall.  (Compl. ¶ 30;

2    CC ¶ 43.)  On July 11, 2011, Silverstar tendered its defense of the Chapter 40 Notice to

3    Lexington; Lexington disclaimed any obligation for the defects because Energetic had not

4    satisfied the SIR and because the policy did not cover the claims alleged.  (Compl. ¶ 31.)  On

5    October 26, 2011, the Ciminis filed the underlying action against Silverstar in Nevada state court,

6    captioned as *Robert and Gail Cimini v. Silverstar Associates, et al.*, No. 11-03117 (Second

7    Judicial District Court for the State of Nevada for the Washoe County).  (*Id.* ¶ 25.)  On January

8    10, 2012, Silverstar filed a third-party complaint in that action against various subcontractors,

9    including Energetic.  (*Id.* ¶¶ 32–34.)

10          On July 30, 2012, Energetic defaulted on the Ciminis' Chapter 40 Notice by virtue

11   of its non-response.  (*Id.* ¶ 35.)  Lexington maintains it was not aware of the third-party complaint

12   against Energetic until after default was entered in the Nevada action, in July of 2012.  (Pl.'s

13   MTD at 2.)  On August 24, 2012, Lexington issued a Reservation of Rights Letter, advising

14   Energetic that Lexington had no obligation to provide Energetic with a defense or indemnity until

15   the SIR was satisfied.  (Compl. ¶¶ 40–41.)  In March 2013, Silverstar notified Lexington that a

16   mandatory settlement conference was pending.  (CC ¶ 76.)  Although Lexington subsequently

17   retained Ferris & Associates as counsel on Energetic's behalf, Energetic was not represented at

18   the settlement conference.  (Compl. ¶ 43; CC ¶ 81.)  At the settlement conference, the Ciminis

19   settled with Silverstar for $100,000, and Silverstar assigned its rights against Energetic to the

20   Ciminis.[2]  (Compl. ¶ 45; CC ¶ 82.)

21          Ferris & Associates subsequently filed a motion to set aside Energetic's default

22   (Compl. ¶ 48), which the Nevada court denied (CC ¶¶ 95, 99).  Thereafter, following a prove-up

23   hearing, the Nevada court entered its proposed findings that Energetic was liable for the claims

24   _____

      defects. . . ."  Nev. Rev. Stat. Ann. § 40.645(2)(b)–(c).

25          [2] Lexington alleges that Silverstar's representation in the underlying action was paid for
26   by other insurers who did not assign their rights to Silverstar.  Lexington claims that Silverstar's
     purported assignment of its right to recover its defense fees to the Ciminis is therefore invalid
27   "because any such rights belong to the insurer(s) who paid for Silverstar's settlement and who
     were neither parties in the Underlying Action nor parties [to] Silverstar's agreement with the
28   Ciminis."  (Compl. ¶¶ 49–50.)

                                        3

1   against it by virtue of the default; that Energetic was responsible for $404,625.11 in damages; and

2   that the Ciminis stepped into the shoes of Silverstar as provided by the settlement agreement and

3   were entitled to attorneys' fees and costs.  (*Id.* ¶¶ 100–101.)  Ferris unsuccessfully objected to the

4   proposed findings, and the court approved the findings and entered judgment against Energetic.

5   (*Id.* ¶¶ 104–108.)  Ferris filed an appeal with the Nevada Supreme Court on Energetic's behalf on

6   October 3, 2014.  (*Id.* ¶¶ 113, 116.)  As noted, in April 2015, Lexington filed this action for

7   declaratory relief against the Ciminis, EPD, and ELP.  (*Id.* ¶ 126.)

8   II.   REQUESTS FOR JUDICIAL NOTICE

9          Under Federal Rule of Evidence 201(b), a court may take judicial notice of a fact

10  that is "not subject to reasonable dispute" in that it is either (1) generally known or (2) capable of

11  accurate and ready determination by resort to sources "whose accuracy cannot reasonably be

12  questioned."  It is the proponent's burden to show that the requested material is the proper subject

13  of judicial notice.  *Hurd v. Garcia*, 454 F. Supp. 2d 1032, 1054–55 (S.D. Cal. Sept. 28, 2006).

14         A.   Lexington's First Request

15         Plaintiff requests the court take judicial notice of documents from the underlying

16  Nevada state court action, captioned *Robert and Gail Cimini v. Silverstar Associates, et al.*, No.

17  CV-1103117.  (RJN1.)  Plaintiff specifically requests the court take notice of "Plaintiff's

18  Opposition to [EPD's] Motion to Lift Default" (Ex. 1).  Exhibit 1 is the Reservation of Rights

19  letter sent by Lexington employee Dick Shaw to EDP on August 24, 2012.  The letter includes

20  provisions of Energetic's insurance policy.  Plaintiff also requests the court take judicial notice of

21  the exhibit list from the Nevada court prove-up hearing (Ex. 2), the Ciminis' Cost of Repair

22  report that was admitted into evidence at the prove-up hearing (Ex. 3), "Defendant [EPD's]

23  Motion to Lift Default and Set Aside Default Order" (Ex. 4), and "Defendant [ELP's] Motion to

24  Lift Default and Set Aside Default Order" (Ex. 5).

25         Defendants object to plaintiff's request.  Defendants argue the request does not

26  comply with Federal Rule of Civil Procedure 56 and that the documents at issue contain facts

27  subject to reasonable dispute.  (Opp'n to RJN, ECF No. 26.)

28  /////

1    "A court may take judicial notice of 'matters of public record' without converting

2    a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d

3    668, 689 (9th Cir. 2001) (internal citations omitted).  As such, defendants' Rule 56 argument is

4    unavailing.  The court notes both that judicial notice of court records is routine, *see, e.g.*, *Rowland*

5    *v. Paris Las Vegas*, No. 13-02630, 2014 WL 769393, at *3 (S.D. Cal. Feb. 25, 2014), and that the

6    court may take judicial notice of the existence of documents without taking judicial notice of the

7    truth of the matters asserted therein, *In re Bare Escentuals, Inc. Sec. Lit.*, 745 F. Supp. 2d 1052,

8    1067 (N.D. Cal. Sept. 30, 2010).  Additionally, "[a] district court ruling on a motion to dismiss

9    may consider a document the authenticity of which is not contested, and upon which the

10   plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).

11          Here, the Lexington policy provisions are relevant to the parties' claims, are not

12   attached to the complaint, and are included in Exhibit 1 of plaintiff's requested materials.  Though

13   defendants claim that the exhibit's contents are subject to dispute, they do not question the

14   document's authenticity.  Taking judicial notice of the policy provisions, without noticing the

15   truth of the matters asserted in Mr. Shaw's letter, is appropriate under these circumstances.  *See*

16   *Enger v. Allstate Ins. Co.*, 682 F. Supp. 2d 1094, 1096 (E.D. Cal. Dec. 9, 2009), *aff'd*, 407 F.

17   App'x 191 (9th Cir. 2010).  Similarly, with respect to Exhibits 2 through 5, the court finds the

18   materials are "helpful for examining the claims litigated in state court," *Manufactured Home*

19   *Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005), but reiterates that the court

20   takes judicial notice only of the materials' existence and not the veracity of their contents.  The

21   court GRANTS plaintiff's first request for judicial notice.

22          B.       Lexington's Supplemental Request

23          In its July 28, 2015 supplemental request, plaintiff requests the court take judicial

24   notice of additional documents from the underlying Nevada action: (1) the reply brief to

25   Lexington's opposition to motion to strike (Ex. 6); (2) the transcript of the April 5, 2013

26   settlement conference (Ex. 7); (3) the court's findings of fact and conclusions of law (Ex. 8); (4)

27   the defaults against EPD and ELP (Exs. 9, 10); (5) Energetic's motion for relief under Nevada

28

5

1   Rule of Civil Procedure 60[3] (Ex. 11); and (6) Lexington's motion to alter or amend (Ex. 12).

2   (ECF No. 30.)  As to the settlement conference transcript, plaintiff specifically seeks judicial

3   notice of the terms of the settlement agreement.  (*Id.*)  Defendants do not oppose the supplemental

4   request.

5             Here, the terms of the settlement agreement, including the assignment of

6   Silverstar's rights against EDP and ELP to the Ciminis, are essential to plaintiff's claims and are

7   referenced in both parties' pleading papers.  Though the parties dispute the validity of the

8   settlement agreement, the parties agree about its terms.  The same is true of the defaults entered

9   against Energetic.  Moreover, the filings from the underlying action are matters of public record.

10  The court GRANTS plaintiff's supplemental request and judicially notices the existence of the

11  documents mentioned above, but not the truth of their contents.

12  III.     THRESHOLD ISSUES

13           A.     Standing

14           Lexington argues the Ciminis' counter-complaint should be dismissed because the

15  Ciminis allege only that they requested a judicial assignment from the Nevada state court, not that

16  they were granted such an assignment.  (MTD at 10:16–21.)  Lexington also argues the Ciminis

17  lack standing to enforce Silverstar's judgment.  (*Id.* at 6:24–7:9.)

18           "Standing is the threshold issue of any federal action."  *Employers-Teamsters*

19  *Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 923 (9th

20  Cir. 2007).  To demonstrate Article III standing plaintiffs must show they are "under threat of

21  suffering 'injury in fact' that is concrete and particularized; the threat must be actual and

22  imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of

23  the defendant; and it must be likely that a favorable judicial decision will prevent or redress the

24  injury."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  The party invoking the

25  court's jurisdiction bears the burden of showing standing.  *Summers v. Earth Island Inst.*, 555

26  U.S. 488, 493 (2009).  Generally, a plaintiff may not assert the rights of third parties, *see Elk*

27

28           [3]  Nevada Rule of Civil Procedure 60 provides grounds for relief from a judgment or
    order.  Nev. R. Civ. P. 60.

1   *Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 14 (2004), but in cases of legal assignment an

2   assignee may sue on an assigned claim in federal court based on the assignor's injuries, *Sprint*

3   *Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008) ("Lawsuits by assignees . . .

4   are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial

5   process.'") (internal citations omitted).

6           Here, the counter-complaint alleges that Silverstar assigned its rights against ELP

7   and EPD to the Ciminis (CC ¶ 82) and that the Nevada court found that the Ciminis stepped into

8   the shoes of Silverstar (*id.* ¶¶ 101, 106).  Construing the counter-complaint in the light most

9   favorable to the Ciminis, this court finds the Ciminis have adequately alleged facts demonstrating

10  their standing to allege counter-claims against Lexington.  (*See also* Defs.' Opp'n to Pl.'s MTD,

11  Ex. 3, at 3 ¶¶ 1, 6, ECF No. 25.)

12          B.      Choice of Law

13          In diversity actions, federal district courts apply the choice of law rules of the state

14  in which they sit.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  California

15  courts have used both common law and statutory choice of law rules.  *Compare, e.g.*, *Kearney v.*

16  *Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08 (2006) (describing a common law

17  "governmental interests" test) *with, e.g.*, *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th

18  1436, 1459–61 (2007) (applying Cal. Civ. Code § 1646).  The statutory approach is simpler and

19  more straightforward than the common law governmental interests test: when interpreting a

20  contract, a court first looks "to the law and usage of the place where [the contract] is to be

21  performed," but if the contract "does not indicate a place of performance," the contract is

22  interpreted "according to the law and usage of the place where it [was] made."  Cal. Civ. Code

23  § 1646; *Frontier*, 153 Cal. App. 4th at 1450.  In *Frontier*, the California Court of Appeal

24  thoroughly reviewed the history of both the governmental interests test and section 1646, and

25  concluded that the California Supreme Court had not abrogated the statute, which by its own

26  terms governs the interpretation of contracts.  *See* 153 Cal. App. 4th at 1454–61 ("The California

27  Supreme Court has never applied the governmental interest analysis to determine the law

28

1    governing the interpretation of a contract and has never stated or suggested that section 1646 does

2    not determine the law governing the interpretation of a contract.").

3            Here, this court finds that California Civil Code section 1646 governs this action's

4    contract claims.  The statute's more specific provisions and status as a legislative enactment

5    suggest its applicability in cases of contract interpretation.  By requiring the court to determine

6    whether a contract "indicate[s] a place of performance," the statute bolsters "the fundamental goal

7    of contract interpretation" under California law: "to give effect to the mutual intent of the parties

8    as it existed at the time of contracting."  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005,

9    1014 (9th Cir. 2012) (citations and internal quotation marks omitted).  As to the non-contract

10   claims, the governmental interests test applies as explained below.

11                          1.      Contract Claims

12           To begin, the parties agree the Lexington insurance policies do not specify a place

13   of performance.  (Pl.'s MTD at 5:5–6; Defs.' Opp'n to Pl.'s MTD at 3:21; *see also* Pl.'s MTD,

14   Exs. A & B.)  However, even absent an express specification, "[t]he parties' intention as to the

15   place of performance sometimes can be gleaned from the nature of the contract and the

16   surrounding circumstances."  *Frontier*, 153 Cal. App. 4th at 1450.  In *Frontier*, the insurance

17   policy endorsements specifically named the City of Beverly Hills and the Department of

18   Transportation of the City of Los Angeles as insureds.  *Id.* at 1461.  The court found, "[t]hese

19   three endorsements clearly demonstrate that the parties intended the policy to provide coverage

20   for the insureds' oil and gas operations in Beverly Hills . . . .  We therefore conclude that

21   California was the intended place of performance . . . and that California law governs the

22   interpretation of the policy."  *Id.* at 1461–62.

23           Here, the Lexington policy defines "coverage territory" as "The United States of

24   America," (Pl.'s MTD, Ex. A, at LEX 20), and states that Lexington "will submit to the

25   jurisdiction of [any] court of competent jurisdiction within the United States."  (*Id.* at LEX 28).

26   This court therefore concludes that the nature and surrounding circumstances of the contract

27   cannot be determined and accordingly considers the place where the contract was made.  Because

28   the policy lists the insurance broker as "Crump E&S of San Francisco Ins." and the insured as

1   "Energetic Painting & Drywall" with an address in North Highlands, California, (*id.* at LEX 122),

2   this court concludes the contract was made in California and California law applies.

3                              2.   Non-Contract Claims

4          For non-contractual claims, California courts apply the "governmental interest"

5   test, which requires a three-step analysis:

6          First, the court determines whether the relevant law of each of the potentially
           affected jurisdictions with regard to the particular issue in question is the
7          same or different.  Second, if there is a difference, the court examines each
           jurisdiction's interest in the application of its own law under the
8          circumstances of the particular case to determine whether a true conflict
           exists.   Third, if the court finds that there is a true conflict, it carefully
9          evaluates and compares the nature and strength of the interest of each
           jurisdiction in the application of its own law "to determine which state's
10         interest would be more impaired if its policy were subordinated to the policy
           of the other state" and then ultimately applies "the law of the state whose
11         interest would be the more impaired if its law were not applied."

12  *Kearney*, 39 Cal. 4th at 107–08 (citation omitted).

13         Here the parties agree that, as applied to most of the claims, there are not material

14  differences between California and Nevada law.  However, to the extent that the laws differ as

15  applied to defendants' claims regarding breach of the duty of good faith and fair dealing and

16  violation of Nevada's Unfair Trade Practices Act, it is appropriate to consider whether California

17  or Nevada has a greater interest in application of its law.  Lexington relies on the case of *Axis*

18  *Reinsurance Co. v. Telekenex, Inc.* for its argument that California has a greater interest in

19  applying its law to a policy negotiated and formed in California, regardless of where the loss

20  occurred.  (*See* Pl.'s MTD, at 6:27–7:5.)  In *Telekenex*, an insurance company sought a judicial

21  declaration that its insurance policy did not cover any amounts awarded to the insured,

22  Telekenex, in an underlying action.  *Axis Reinsurance Co. v. Telekenex, Inc.*, 913 F. Supp. 2d

23  793, 797 (N.D. Cal. Dec. 19, 2012).  The underlying action arose when one of Telekenex's

24  competitors sued Telekenex employees in the state of Washington.  *Id.* at 798.  Telekenex was a

25  California company and 100 percent of its employees worked in California.  *Id.*  The insurance

26  policy was issued in San Francisco and though it did not include a choice-of-law provision, it did

27

28

1  include a single amendatory endorsement[4] that referred to the state of California.  *Id.* at 805.  The

2  court found that even though the suit was "litigated in Washington, based on acts and omissions

3  by Washington residents in Washington state, and concerned harm to [a company] which is based

4  out of Washington," California had the greater interest because "the Policy was executed in this

5  state and the facts suggest[ed] that the parties intended for California law to govern its

6  application."  *Id.* at 806.

7          The instant case is distinguishable from *Telekenex*.  There, the insurance policy at

8  issue explicitly referenced California in the amendatory endorsement.  There is no such reference

9  here.  In fact, as noted above, the policy defines the coverage territory as national in scope.  As

10  such, the place of performance and location of loss holds more weight.  *See Stonewall Surplus*

11  *Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 648 (1993).   The place of

12  performance and location of loss is Nevada:  the construction defects giving rise to the underlying

13  action concerned a home in Nevada, and that action was litigated in Nevada state courts.  Nevada

14  has a greater interest than California in the non-contract aspects of the instant action and Nevada

15  law should thus be applied to the good faith and fair dealing and Unfair Trade Practices claims.

16  IV.     MOTION TO DISMISS

17          A.     Legal Standard

18          Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

19  complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss

20  "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a

21  cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

22          Although a complaint need contain only "a short and plain statement of the claim

23  showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to survive a motion to

24  dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim

25

26          [4] Many insurance policies will include multiple state-specific endorsements.  Thus, "where a policy insures against risks located in several states, e.g., where the policy contains

27  amendatory endorsements for multiple states, courts will often apply the law of the state of the principal location of the particular risk involved."  *Telekenex*, 913 F. Supp. 2d at 805.

28

1    to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

2    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A complaint must include something

3    more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

4    conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting

5    *Twombly*, 550 U.S. at 555).   Determining whether a complaint will survive a motion to dismiss

6    for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

7    its judicial experience and common sense." *Id.* at 679.   Ultimately, the inquiry focuses on the

8    interplay between the factual allegations of the complaint and the dispositive issues of law in the

9    action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

10             In making this context-specific evaluation, this court "must presume all factual

11   allegations of the complaint to be true and draw all reasonable inferences in favor of the

12   nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).   This rule

13   does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478

14   U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, to "allegations that contradict matters

15   properly subject to judicial notice," or to material attached to or incorporated by reference into the

16   complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)

17          B.    Ciminis' Declaratory Relief Claim

18             The Ciminis seek judicial determination of their rights and duties, as well as

19   Lexington's rights and duties, under the Lexington insurance policy.  (CC ¶ 130.)  Lexington

20   argues the Ciminis' declaratory claim should be dismissed because it is duplicative of the other

21   claims and seeks only to redress past wrongs.  (Pl.'s MTD at 7:20–21.)

22             Under the Declaratory Judgment Act, 28 U.S.C. § 2201, a court may "declare the

23   rights and other legal relations" of the parties to an actual controversy.  It is "an enabling Act,

24   which confers discretion on the courts rather than an absolute right upon a litigant." *Wilton v.*

25   *Seven Falls Co.*, 515 U.S. 277, 287 (1995) (internal quotation marks omitted).  In its discretionary

26   consideration of whether to award declaratory relief, a court is guided by two criteria: (1) whether

27   the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, and

28   (2) whether the judgment will afford relief from the uncertainty, insecurity and controversy

1   giving rise to the proceeding. *McGraw-Edison Co. v. Preformed Line Products Company*, 362

2   F.2d 339, 342 (9th Cir. 1966). Declaratory relief "operates prospectively . . . ." *Amaral v.*

3   *Wachovia Mortgage Corp.*, 692 F. Supp. 2d 1226, 1235 (E.D. Cal. 2010) (internal quotation

4   marks omitted, collecting cases). "A declaratory relief action serves to set controversies at rest

5   before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in

6   short, the remedy is to be used in the interests of preventive justice, to declare rights rather than

7   execute them." *Id.* (internal quotation marks omitted).

8          Here, it is unclear from the Ciminis' allegations whether a basis for a declaratory

9   relief exists. Specifically, it is unclear whether the declaratory relief sought would resolve only

10  past wrongs or whether it would likely impact future conduct. *See Khalsa v. Hali*, No. 13-03575,

11  2014 WL 3883713, at *2 (N.D. Cal. Aug. 6, 2014) (noting "no basis for declaratory relief exists

12  where only past wrongs are involved"). Accordingly, the court GRANTS the motion to dismiss

13  defendants' declaratory relief claim with leave to amend if defendants can do so consonant with

14  Rule 11.

15          C.      Ciminis' Breach of Contract Claim

16          Lexington makes three arguments in support of its motion to dismiss the Ciminis'

17  breach of contract claim. First, Lexington alleges that its policies are subject to an unsatisfied

18  SIR (Pl.'s MTD at 8); second, Lexington argues the allegations are for defective work, which

19  does not constitute "property damage" under the insurance policy (*id.* at 9); and finally,

20  Lexington argues Energetic breached the notice requirements under the policy, relieving

21  Lexington as the insurer of liability (*id.* at 11).

22          In California, a breach of contract claim includes four elements: (1) the contract;

23  (2) the plaintiff's performance or excuse of non-performance; (3) the defendant's breach of

24  contract; and (4) damages resulting from the defendant's breach. *San Mateo Union High Sch.*

25  *Dist. v. Cnty. of San Mateo*, 213 Cal. App. 4th 418, 439 (2013). Here, the court finds the

26  Ciminis' allegations are sufficient to state a claim for breach of contract. First, the existence of a

27  contract is uncontested; Lexington acknowledges that an insurance policy was issued to Energetic

28  and that the Ciminis now stand in the shoes of Energetic. (Compl. ¶ 53.) Second, the Ciminis

1    allege that they have performed all conditions of the insurance policy required to be performed

2    (CC ¶ 134), thus satisfying the performance element.  Third, the Ciminis allege Lexington

3    breached the provisions of the insurance contract by failing to adequately investigate, evaluate,

4    process and settle their claim.  (CC ¶ 139.)  Finally, the Ciminis allege they have suffered

5    damages as a result of Lexington's failure to provide to them the coverage and benefits that were

6    due under the policy.  (*Id.* ¶¶ 138–140.)  At this stage of the litigation, these allegations are

7    sufficient to provide sufficient notice to Lexington of the nature of defendants' breach of contract

8    claim.  The court DENIES Lexington's motion to dismiss this claim.

9               D.      Ciminis' Breach of the Duty of Good Faith and Fair Dealing Claim

10                    Plaintiff argues defendants' breach of the duty of good faith and fair dealing claim

11   should be dismissed for two independent reasons: first, it cannot proceed without a valid breach

12   of contract claim, and second, the allegations do not show "conscious and deliberate

13   wrongdoing."  (ECF No. 10 at 15–17.)  Defendants counter a breach of contract claim is not a

14   requirement to bringing a breach of the duty of good faith and fair dealing claim and the factual

15   allegations are adequately pled.  (ECF No. 25 at 11–12.)

16                    As noted above, Nevada law governs the breach of the duty of good faith and fair

17   dealing claim.  "Nevada law recognizes the existence of an implied covenant of good faith and

18   fair dealing in every contract."  *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 792–93 (1993).

19   "An insurer fails to act in good faith when it refuses without proper cause to compensate the

20   insured for a loss covered by the policy."  *Id.* at 793.  "Such conduct gives rise to a breach of the

21   covenant of good faith and fair dealing."  *Id.*  "This breach or failure to perform constitutes 'bad

22   faith' where the relationship between the parties is that of insurer and insured."  *Id.*  "Bad faith

23   involves an actual or implied awareness of the absence of a reasonable basis for denying benefits

24   of the policy."  *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 102 Nev. 601, 605 (1986).

25                    Here as well, the allegations are sufficient to survive plaintiff's motion to dismiss.

26   Specifically, defendants' counter-complaint alleges that plaintiff breached the covenant of good

27   faith and fair dealing by, among other things, "(a) refusing, without proper basis, to recognize its

28   coverage obligations; (b) failing to make a timely determination of coverage; (c) failing to

13

properly investigate [their claims]; [and] (d) failing to inform [them] of what [plaintiff] needed

[defendants] to do and to provide to [plaintiff] so that [plaintiff] could promptly and timely adjust

[defendants'] claim . . . ."  (CC ¶ 144.)  These allegations show that defendants have stated a

claim for breach of the duty of good faith and fair dealing.  *See Turk v. TIG Ins. Co.*, 616 F. Supp.

2d 1044, 1054 (D. Nev. 2009).

       E.     <u>Ciminis' Unfair Trade Practices Claim</u>

Plaintiff argues the unfair trade practices claim should be dismissed because the

allegations are conclusory and lack factual support.  (ECF No. 10 at 13–14.)  Defendants counter

their allegations are sufficient to survive plaintiff's motion to dismiss.  (ECF No. 25 at 15.)

Defendants' claim is based on Nevada Revised Statutes section 686A.310.  (CC

¶ 152.)  The Title of that section reads "unfair practices in settling claims; LIABILITY OF

INSURER for damages."  *See* Nev. Rev. Stat. Ann. § 686A.310.  The section itself supplies a list

of acts deemed to be unfair practices.  Nev. Rev. Stat. Ann. § 686A.310(1)(a)–(p).  Each act is

accompanied by its own required standard of conduct.  But no section contains "a *mens rea* of

knowing or reckless intent . . . ."  *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co. of

Pittsburgh, Pennsylvania*, 863 F. Supp. 1237, 1243 (D. Nev. 1994) (emphasis in original).  Some

of the provisions involve a reasonableness standard.  *Id.* (citing NRS §§ 686A.310(c), (d), (e), and

(n) (involving questions as to the promptness of an insurer's actions)).

Here, defendants' counter-complaint alleges the following instances of wrongful

conduct: (1) "misrepresenting pertinent facts and insurance policy provisions relating to

coverages at issue"; (2) "failing to effectuate a prompt, fair and equitable settlement of plaintiffs'

claim"; (3) "compelling the plaintiffs to institute litigation to recover amounts due under the

insurance policy"; (4) "compelling plaintiffs to institute litigation to enforce the terms of the

insurance policy"; (5) "failing to provide a reasonable explanation of the basis for denying and/or

offering to settle or compromise the plaintiffs' claim"; (6) "failing to provide promptly to the

plaintiffs a reasonable explanation of the basis in the insurance policy, with respect to the facts of

the insured's claim and the applicable law, for the denial of this claim or for an offer to settle or

compromise this claim"; (7) "failing to retain, train and supervise competent adjusters to conduct

1   prompt, thorough and impartial investigations to promptly determine the true facts of this claim";

2   (8) "misrepresenting the law applicable to the policy and its claims handling"; (9) "carrying out

3   unfair and deceptive trade practices in the business of insurance"; and (10) other wrongful

4   conduct.  (CC, ECF No. 9 at 54 ¶ 155.)  These allegations by themselves cannot survive the

5   motion to dismiss because they merely recite various unidentified subsections of the Nevada

6   statute.  And it is unclear how the cited paragraphs of the counter-complaint actually support the

7   above legal conclusions.  *Stacey v. Mercury Cas. Co.*, No. 14-814, 2014 WL 3816513, at *3 (D.

8   Nev. Aug. 4, 2014); *Ruggieri v. Hartford Ins. Co. of the Midwest*, No. 13-00071, 2013 WL

9   2896967, at *4 (D. Nev. June 12, 2013) ("Because reciting the elements of a cause of action is

10  insufficient to state a claim, [the plaintiff's] Unfair Trade Practices Act claim must be

11  dismissed.").  Accordingly, the court DISMISSES the Unfair Trade Practices Act claim, with

12  leave to amend if amendment is possible.

13          F.        Ciminis' Enforcement of Judgment Claim

14                  Plaintiff argues the Ciminis' enforcement of judgement claim cannot proceed for

15  three reasons: (1) the Nevada judgment has not been domesticated in California as required under

16  California Insurance Code section 11580; (2) the Nevada judgment is not for "property damage,"

17  rather it represents indemnity for lost money; and (3) the enforcement of judgment claim should

18  be dismissed if the breach of contract claim is dismissed.  (ECF No. 10 at 14–15.)  The Ciminis

19  counter their claim is a compulsory counterclaim that "must be brought in this forum."  (ECF No.

20  25 at 16.)

21                  Here, the allegations are insufficient to survive plaintiff's motion to dismiss.

22  Specifically, the claim's allegations are as follows: "Plaintiffs have the legal right to enforce the

23  Judgment entered by the Second Judicial District Court [of Nevada] against Defendants

24  Lexington," (CC ¶ 159), and "[t]he Plaintiffs are entitled to this Court's Order confirming their

25  right to execute on the entire Judgment against the Policy and against Defendant Lexington" (*id.*

26  ¶ 160).  However, these allegations do not inform the court of the bases of the claim.  The court is

27  left to guess under what authority the Ciminis bring the claim and what relief they seek.  *Cf. In re*

28  *Computer Sciences Corp. Derivative Litig.*, 244 F.R.D. 580, 588 (C.D. Cal. 2007).  The court

1    GRANTS the motion to dismiss as to the enforcement of judgment claim with leave to amend if

2    the Ciminis can do so consonant with Rule 11.

3    V.        MOTION TO STRIKE

4         A.        Legal Standard

5              Rule 12(f) authorizes courts to "strike from a pleading . . . any redundant,

6    immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A "redundant" matter is

7    defined as the needless repetition of allegations or the inclusion of allegations that "are foreign to

8    the issue." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005). An "immaterial" matter

9    has no essential or important relationship to the claim for relief being pleaded. *Id.* An

10   "impertinent" matter does not pertain and is unnecessary to the issues in question. *Id.* Finally, a

11   "scandalous" matter is that which improperly casts a derogatory light on a party to the action. *Id.*

12             The function of a Rule 12(f) motion is "to avoid the expenditure of time and

13   money that must arise from litigating spurious issues by dispensing with those issues prior to trial

14   . . . ." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal

15   quotation marks omitted). Despite this salutary function, motions to strike are viewed with

16   disfavor because they too are often used as delaying tactics and because of the general policy

17   favoring resolution of cases on the merits. *See Sliger v. Prospect Mortgage, LLC*, 789 F. Supp.

18   2d 1212, 1216 (E.D. Cal. 2011). Indeed, a motion to strike will be granted only if "it is clear that

19   the matter to be stricken could have no possible bearing on the subject matter of the litigation."

20   *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012) (internal quotation

21   marks omitted).

22             Moreover, in ruling on a motion to strike, a "court[] may not resolve disputed and

23   substantial factual or legal issues . . . ." *Whittlestone,* 618 F.3d at 973 (internal quotation marks

24   omitted). As with a motion to dismiss, courts view the challenged pleading in the light most

25   favorable to the non-moving party. *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d

26   925, 930 (N.D. Cal. 2013). Ultimately, the decision whether to strike a matter lies within the

27   sound discretion of a district court. *Whittlestone*, 618 F.3d at 974.

28

16

1          B.      Attorneys' Fees and Punitive Damages

2               Plaintiff seeks to strike defendants' request for attorneys' fees and punitive

3    damages.  (ECF No. 10 at 18–19.)

4               Here, plaintiff has not met its burden under Rule 12(f) to show the Ciminis'

5    request for attorneys' fees and punitive damages should be stricken.  "For the purposes of a

6    motion to strike, where a plaintiff has met the basic pleading requirements under the Federal

7    Rules, a plaintiff's damages claim is not immaterial, because whether these damages are

8    recoverable relates directly to the plaintiff's underlying claim for relief [and] is not impertinent,

9    because whether these damages are recoverable pertains directly to the harm being alleged." *Rees*

10   *v. PNC Bank, N.A.*, No. 14-05232, 2015 WL 1548952, at *5 (N.D. Cal. Apr. 7, 2015) (internal

11   quotation marks omitted).  The Ninth Circuit has provided clear guidance in saying that Rule

12   12(f) does not authorize a district court to strike "a claim for damages on the basis that it is

13   precluded as a matter of law."  *Ferretti v. Pfizer Inc.*, 855 F. Supp. 2d 1017, 1029 (N.D. Cal.

14   2012).  Hence, any argument that defendants' request for attorneys' fees in the prayer for relief

15   section of the counter-complaint should be stricken as a matter of law is unavailing, as such an

16   argument does not satisfy Rule 12(f).  *Id.* (reaching the same conclusion under similar

17   circumstances).

18              As to the request for punitive damages, "in federal court, a plaintiff may include a

19   short and plain prayer for punitive damages that relies entirely on unsupported and conclusory

20   averments of malice or fraudulent intent." *Id.* at *6.  Defendants have done so here, in saying:

21   "Defendant Lexington acted fraudulently, oppressively, and in malicious disregard of the rights of

22   Plaintiffs.  Plaintiffs, therefore, seek punitive damages by way of punishment and deterrence in an

23   amount to be determined at trial."  (CC ¶ 148.)  Plaintiff's motion to strike defendants' request for

24   attorneys' fees and punitive damages is DENIED.

25         C.      Affirmative Defenses in General

26              Plaintiff also argues defendants' affirmative defenses should be dismissed for lack

27   of factual support.  (ECF No. 10 at 20.)  Defendants respond plaintiff has not met its burden under

28   Rule 12(f).  (ECF No. 25 at 18–20.)

1    A motion to strike provides an early challenge to a particular defense's legal

2    sufficiency. *State of Cal. ex rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 38 (N.D.

3    Cal. 1981). "An affirmative defense, under the meaning of Federal Rule of Civil Procedure 8(c),

4    is a defense that does not negate the elements of the plaintiff's claim, but instead precludes

5    liability even if all of the elements of the plaintiff's claim are proven." *Barnes v. AT & T Pension*

6    *Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173 (N.D. Cal. 2010). "It is a defense

7    on which the defendant has the burden of proof." *Id.* at 1174. On the other hand, "[a] defense

8    which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."

9    *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). While courts rarely

10   grant Rule 12(f) motions to strike affirmative defenses, if an affirmative defense is a negative

11   defense and should instead be included as a denial in the answer, the motion to strike will be

12   granted. *See Barnes*, 718 F. Supp. 2d at 1173.

13       A Rule 12(f) motion is proper where a defense is either (1) insufficient as a matter

14   of law or (2) insufficient as a matter of pleading. *Dodson v. Strategic Restaurants Acquisition*

15   *Co. II, LLC*, 289 F.R.D. 595, 603 (E.D. Cal. 2013). An affirmative defense is legally insufficient

16   when "it lacks merit under any set of facts the defendant might allege." *Id.* An affirmative

17   defense is insufficient as a matter of pleading if it fails to give plaintiff "fair notice." "The 'fair

18   notice' required by the pleading standards only requires describing the defense in 'general

19   terms.'" *Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) (quoting 5

20   Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1274 (3d ed. 1998)).

21           1.    First and Twenty-Eighth Affirmative Defenses: Failure to State a Claim

22       Defendants' first affirmative defense provides: "Defendant alleges that the

23   Complaint, and each and every claim for relief stated therein fails to state facts sufficient to

24   constitute a claim for relief as against Defendant." (ECF No. 9 at 26.) Defendants' twenty-eighth

25   affirmative defense provides essentially the same: "Plaintiff has failed to plead the causes of

26   action against Defendants with particularity and plausibility . . . ." (*Id.* at 30.) Failure to state a

27   claim is not an affirmative defense; rather it is an assertion of a defect in a plaintiff's prima facie

28   case. *See Joe Hand Promotions, Inc. v. Estradda*, No. 10-02165, 2011 WL 2413257, at *2 (E.D.

18

1   Cal. June 8, 2011); *see also Barnes,* 718 F. Supp. 2d at 1174.  Accordingly, defendants' first and

2   twenty-eighth affirmative defenses are STRICKEN.

3                              2.      Second Affirmative Defense: Laches

4          Defendants' second affirmative defense provides:

5              Plaintiff's claims are barred by the doctrine of laches in that it
               delayed in bringing this action for almost four years after it received
6              notice of the claim; almost two years after the trial on the merits of
               the damages; seven months after the order of judgment and
7              damages issued by the Second Judicial District Court; and almost
               six months after Lexington's captive counsel invited the Ciminis to
8              execute on the assets of ELP and/or EPD.

9   (ECF No. 9 at 26.)

10          To establish the defense of laches, "a defendant must allege neglect or delay in

11  bringing suit to remedy an alleged wrong, which taken together with lapse of time and other

12  circumstances, causes prejudice to the adverse party and operates as an equitable bar."  *Desert*

13  *European Motorcars, Ltd. v. Desert European Motorcars, Inc.*, No. 11-197, 2011 WL 3809933,

14  at *3 (C.D. Cal. Aug. 25, 2011) (internal quotation marks omitted).  Here, the allegations of the

15  second affirmative defense do not set forth facts to show prejudice.  Hence, the court STRIKES

16  the second affirmative defense.

17          The court however grants leave to amend because defendants, in their opposition

18  brief, set forth facts that may satisfy the requirement of pleading prejudice.  *See Orion Tire Corp.*

19  *v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137 (9th Cir. 2001) (noting "new" facts in a

20  plaintiff's opposition papers can be considered by courts in deciding whether to grant leave to

21  amend).  For example, defendants assert, "[h]ad Lexington brought its declaratory relief suit in a

22  timely manner, the Ciminis would have been able to make a decision as to whether to accept

23  Silverstar's assignment with actual knowledge of Lexington's positions on coverage that were not

24  disclosed until Lexington filed this action.  Thus, the delay by Lexington clearly and

25  unequovically [sic] caused prejudice to the Ciminis."  (ECF No. 25 at 19.)

26                             3.      Third Affirmative Defense: Mitigation of Damages

27          Defendants' third affirmative defense provides: "[Lexington] has failed to mitigate

28  its damages, if any there may be."  (ECF No. 9 at 26.)

1    "[C]ourts have held that a generalized statement meets defendant's pleading

2    burden with respect to the affirmative defense of damage mitigation." *Bd. of Trs. of San Diego*

3    *Elec. Pension Trust v. Bigley, Elec., Inc.*, No. 07-634, 2007 WL 2070355, at *3 (S.D. Cal. July

4    12, 2007). While this affirmative defense contains a generalized statement, defendants have met

5    their burden here. *See Desert European Motorcars, Ltd.*, 2011 WL 3809933, at *2. The motion

6    to strike it is DENIED.

7                    4.      Fifteenth Affirmative Defense: Waiver

8              Defendants claim "by providing a defense to ELP/EPD, [Lexington] has waived its

9    arguments that there is no potential for a defense and/or indemnity under the policy." (ECF No. 9

10   at 28.)

11             "A defense of [w]aiver focuses on intent. If an individual intentionally

12   relinquishes a known right, either expressly or by conduct inconsistent with an intent to enforce

13   that right, he has waived it." *Ganley v. Cnty. of San Mateo*, No. 06-3923, 2007 WL 902551, at *6

14   (N.D. Cal. Mar. 22, 2007) (internal quotation marks omitted, alteration in original); *see also*

15   *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 31–34 (1995), as modified on denial of reh'g (Oct.

16   26, 1995). "The courts have repeatedly held that an insurer does not waive or relinquish any

17   coverage defenses it fails to assert at the time of its acceptance of a tender of defense, even when

18   it does not make any express and full reservation of rights for a substantial period of time after the

19   defense has been accepted." *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th

20   1165, 1189 (2000); *see also Waller*, 11 Cal. 4th at 31–34. At this stage of litigation, it appears it

21   is a factual question whether this defense is viable, and hence, the determination of its viability is

22   not appropriately resolved on a motion to strike. *Cf. Ringler*, 80 Cal. App. 4th at 1189  (finding

23   "no evidence respondents ever made any *intentional* relinquishment of their coverage defenses at

24   any point, despite initially accepting Ringler's tender of defense and funding that defense for two

25   years" (emphasis in original)). The motion to strike this defense is DENIED.

26

27

28

                                              20

1          5.     Twenty-First Affirmative Defense: Unclean Hands

2          Defendants allege plaintiff "has engaged in inequitable conduct by, among other

3   things, making factual allegations in the Second Judicial District Court" that were false.  (ECF

4   No. 9 at 29.)

5          The doctrine of unclean hands stems from the legal maxim that one who comes to

6   court seeking equity must do so with clean hands.  *Blain v. Doctor's Co.*, 222 Cal. App. 3d 1048,

7   1059 (1990).  "The [unclean hands] doctrine demands that a plaintiff act fairly in the matter for

8   which he seeks a remedy.  He must come into court with clean hands, and keep them clean, or he

9   will be denied relief, regardless of the merits of his claim."  *Brown v. Grimes*, 192 Cal. App. 4th

10  265, 282 (2011) (internal quotation marks omitted, alteration in original).  As an affirmative

11  defense, unclean hands can be invoked where a plaintiff has engaged in inequitable conduct in

12  connection with the matter in controversy.  *Dickson, Carlson & Campillo v. Pole*, 83 Cal. App.

13  4th 436, 446 (2000).  But even then, it applies "only where it would be inequitable to grant the

14  plaintiff any relief."  *Id.* at 447.  "As a general rule, the application of the doctrine of unclean

15  hands is primarily a question of fact."  *Ins. Co. of N. Am. v. Liberty Mut. Ins. Co.*, 128 Cal. App.

16  3d 297, 306 (1982).

17         Here, at the stage of this litigation, the allegations provide fair notice of the bases

18  of the defense.[5]  Defendants allege, among other things, plaintiff made false factual statements

19  during the underlying Nevada proceedings, did not defend and indemnify ELP and EPD as

20  required, and denied ELP and EPD's claims for "improper purpose."  (ECF No. 9 at 29.)  The

21  court DENIES plaintiff's motion to strike this defense.

22         6.     Twenty-Second Affirmative Defense: Estoppel

23         Defendants allege plaintiff is "estopped from bringing this action due to its prior

24  positions taken in the underlying . . . case."  (ECF No. 9 at 29.)

25

26         ────────────────────

27         [5] The court notes that in finding so, it does not make a final determination that the defense
    is legally applicable to the facts of this case.  *See Lovett v. Carrasco*, 63 Cal. App. 4th 48, 55

28  (1998) (the findings of fact on which a court may rely in determining whether the unclean hands
    doctrine applies must be supported by substantial evidence).

1      "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases."

2    *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984).  "To establish a

3    defense of estoppel, a party must show that the adverse party, either intentionally or under

4    circumstances that induced reliance, engaged in conduct upon which [the relying party] relied and

5    that the relying party acted or changed [its] position to [its] detriment."  *Desert European*

6    *Motorcars, Ltd. v. Desert European Motorcars, Inc.*, No. 11-197, 2011 WL 3809933, at *3 (C.D.

7    Cal. Aug. 25, 2011) (internal quotation marks omitted, alteration in original).  "[T]he party

8    claiming the estoppel must have relied on its adversary's conduct in such a manner as to change

9    his position for the worse[,] and that reliance must have been reasonable in that the party claiming

10   the estoppel did not know nor should it have known that its adversary's conduct was misleading."

11   *Heckler*, 467 U.S. at 59.

12      Here, the allegations are not sufficient to provide fair notice to plaintiff.

13   Defendants allege, "Plaintiff, through its captive counsel, made statements that led to the taking

14   of default and by the Ciminis' seeking to execute upon the assets of ELP and EPD."  (ECF No. 9

15   at 30.)  "Lexington knew that . . . the statements made by its captive counsel were false and/or

16   were detrimental to the interests of its insureds."  (*Id.*)  And based on those statements, the

17   Ciminis "relied upon the assertions made by Lexington's captive counsel to their detriment."

18   (ECF No. 9 at 30.)  Because, however, the allegations do not set forth any facts to indicate what

19   those alleged statements entailed, the allegations do not provide fair notice.  *Desert European*

20   *Motorcars, Ltd.*, 2011 WL 3809933, at *3.  Accordingly, the court GRANTS plaintiff's motion to

21   strike defendants' estoppel affirmative defense, with leave to amend if defendants can do so

22   consonant with Rule 11.

23
24        7.    Fourth through Fourteenth, Sixteenth through Twentieth, Twenty-Third to
              Twenty-Seventh, and Twenty-Ninth through Thirtieth Affirmative
25            Defenses

26      As to these affirmative defenses, plaintiff argues, "[t]he vast majority are no more

27   than a formulaic recitation of the elements and all should be struck on this basis."  (ECF No. 10 at

28

1    20.)  Defendants base their opposition on only four defenses, characterizing Lexington's motion

2    as "attempt[ing] to strike four affirmative defenses . . . ."  (ECF No. 25 at 18.)  Those defenses

3    are: laches, waiver, unclean hands, and estoppel.  (*Id.* at 18–20.)

4            "Courts will not grant motions to strike unless convinced that there are no

5    questions of fact, that any questions of law are clear and not in dispute, and that under no set of

6    circumstances could the claim or defense succeed."  *Novick v. UNUM Life Ins. Co. of Am.*, 570 F.

7    Supp. 2d 1207, 1208 (C.D. Cal. 2008) (internal quotation marks omitted).  This court must "view

8    the pleading under attack in the light most favorable to the pleader."  *Id.* (internal quotation marks

9    omitted).  The burden is on the moving party to show a particular matter should be stricken.  *New*

10   *York City Employees' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009).

11            Here, plaintiff has not met its burden.  Plaintiff makes no specific argument as to

12   why defendants' remaining affirmative defenses should be stricken; rather, it merely makes the

13   one-sentence conclusory argument as noted above.  Based on that argument, this court is not

14   convinced that there are no questions of fact, that any questions of law are clear and not in

15   dispute, and that under no set of circumstances could the defenses succeed.  The court DENIES

16   plaintiff's motion to strike defendants' fourth through fourteenth, sixteenth through twentieth,

17   twenty-third through twenty-seventh, and twenty-ninth through thirtieth affirmative defenses.

18                8.     <u>Thirty-First Affirmative Defense: Unstated Affirmative Defenses</u>

19            Defendants' thirty-first affirmative defense alleges that "all possible affirmative

20   defenses may not have been alleged . . . as sufficient facts were not available after reasonable

21   inquiry and upon filing this answer to the complaint, and therefore, [d]efendants reserve the right

22   to amend their answer to allege additional affirmative defenses, if subsequent investigation

23   warrants."  (ECF No. 9 at 31.)

24            "An attempt to reserve affirmative defenses for a future date is not a proper

25   affirmative defense in itself.  Instead, if at some later date defendants seek to add affirmative

26   defenses, they must comply with Rule 15 of the Federal Rules of Civil Procedure."  *Solis v.*

27   *Zenith Capital, LLC*, No. 08-4854, 2009 WL 1324051, at *7 (N.D. Cal. May 8, 2009).

28   Accordingly, defendants' motion to strike the thirty-first affirmative defense is GRANTED.

VI.     <u>CONCLUSION</u>

        For the foregoing reasons, the court GRANTS in part and DENIES in part each motion.  Defendants' amended counter-complaint and answer consistent with this order are due within twenty-one days of the date of this order.  This order resolves ECF No. 10.

        IT IS SO ORDERED.

DATED:  September 14, 2015.

_____
UNITED STATES DISTRICT JUDGE

24