UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ENERGETIC LATH & PLASTER, INC., a California Corporation, et al.,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | No. 2:15-cv-00861-KJM-EFB<br><br><br>ORDER |

       The matter is before the court on the motions to dismiss and for summary judgment brought by counter-defendant Lexington Insurance Company (Lexington) against counter-plaintiffs Robert and Gail Ciminis. Mot., ECF No. 109 at 1.[1] The Ciminis oppose, Opp'n, ECF No. 122, and Lexington has replied, Reply, ECF No. 125. The court held a hearing on May 18, 2016. Joshua Zlotlow appeared for Lexington, and William Ginn and Nancy Avanzino-Gilbert appeared for the Ciminis. As explained below, the court denies Lexington's motion to dismiss but grants its motion for summary judgment.

---

[1] Pin citations in this document refer to page numbers assigned by the CM/ECF system at the top right corner of each page.

1

I.     PROCEDURAL HISTORY

On April 21, 2015, Lexington filed its complaint for declaratory relief against Energetic Lath & Plaster and Energetic Painting and Drywall (collectively, "Energetic"), and their assignees the Ciminis, identifying thirty-four claims. Fundamentally, Lexington seeks a declaration that it is not liable to Energetic. *See generally* Compl., ECF No. 1. In response, the Ciminis filed a Counter-Complaint. Counter-Compl., ECF No. 9. After two rounds of motions to dismiss, *see* 2015 Order, ECF No. 42; 2016 Order, ECF No. 100, on March 23, 2016, the Ciminis filed the Second Amended Counter-Complaint stating two claims against Lexington: (1) breach of contract, and (2) breach of the duty of good faith and fair dealing. Second Am. Counter-Compl. (SACC), ECF No. 104. On April 11, 2016, Lexington filed the pending motions.[2]

II.    UNDISPUTED FACTS[3]

Lexington issued two commercial general liability policies to Energetic, one for the policy period July 1, 2005 to July 1, 2006, and the other for the policy period July 1, 2006 to July 1, 2007. The policies provide coverage for certain property damage and contain self-insured retention (SIR) provisions, the interpretation of which is disputed by the Ciminis and Lexington. *See* Silverman Decl., Ex. 1, ECF No. 116-1 & Ex. 2, ECF No. 116-2.

Between March and May 2006, Energetic entered into contracts with Silverstar, a Nevada home developer, to perform construction work on a home development in Reno, Nevada. Order at 2. The Ciminis purchased a home in that development. *Id.* On October 26, 2011, the Ciminis filed a complaint in Nevada state court against Silverstar, alleging numerous construction defects in their home (Underlying Action). Stmt. Undisp. Mat. Facts (SUMF) No. 12, ECF

---

[2] The court previously has chided the parties regarding their meet and confer efforts, a joint obligation. While the court continues to find the parties' efforts lacking, it exercises its discretion to reach the merits of the pending motion. If the parties litigate in this court in the future, they are cautioned to follow the letter and the spirit of the court's meet and confer requirement.

[3] In support of its motions, Lexington requested the court judicially notice several facts in documents spanning nearly sixty pages. ECF Nos. 111–114. The court finds it need not consider those facts in resolving the motions, and DENIES Lexington's request for judicial notice. The Ciminis' objection to Lexington's request for judicial notice, RJN Objection, ECF No. 123, is thus MOOT.

No. 124; Order at 2.[4]  Silverstar filed a third-party complaint against other parties, including Energetic.  SUMF No. 13.  On July 30, 2012, the court clerk entered default against Energetic in the Underlying Action.  SUMF No. 15.

The parties dispute whether Lexington was aware of the third-party complaint against Energetic until after the entry of default.  On August 24, 2012, Lexington issued a reservation of rights letter to Energetic.  Shaw Decl., Ex. 4, ECF No. 115-4.  The letter was returned as undeliverable.  Shaw Decl. ¶ 14.  Lexington also sent the email to Energetic's broker, but received no response.  *Id.*  Lexington assigned counsel to defend Energetic in the Underlying Action sometime in early 2013.  SUMF No. 32.[5]

Prior to a settlement conference held on April 4, 2013 in the state court, Lexington had been informed about the default taken against Energetic, but it chose not to participate in the settlement conference.  Silverman Decl., Ex. 1, ECF No. 104-1 at 2.  Also on April 4, 2013, Lexington was informed that the state court had assigned Silverstar's claims against Energetic to the Ciminis.  *Id.*  Prior to a bench trial set for June 3, 2013, the court gave Energetic the opportunity to present evidence to set aside the default entered against it, but it did not do so.  *Id.*  The court held the bench trial and counsel hired by Lexington participated in the trial.  *Id.*  On April 7, 2014, the court found in favor of the Ciminis in the Underlying Action.  *Id.* at 3.  On January 28, 2015, the Ciminis filed a motion seeking judicial assignment to them of Energetic's insurance policy, rights, and benefits purchased from Lexington.  *Id.*  On February 19, 2015, Lexington moved for leave to intervene, in order to oppose the Ciminis' motion.  *Id.*  On June 30,

---

[4] The Ciminis object to a majority of the facts presented by Lexington as violations of the *Rooker-Feldman* doctrine and irrelevant.  *See, e.g.*, SUMF Nos. 12, 14, 15, 16; *see also* RJN Objections, ECF No. 123.  Evidentiary objections are not the proper place to raise issues of *Rooker-Feldman* doctrine violation.  Second, a court cannot rely on irrelevant facts when awarding summary judgment.  Thus, "relevance objections are redundant." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

[5] The Ciminis dispute the actual date counsel was assigned, but do not point to a specific alternate date.  Rather, they generally argue that "Lexington's pleadings in the [Underlying Action] ha[ve] varied as to the date that it assigned counsel to defend [Energetic]."  SUMF No. 32.  The court is not required to examine the entire file for evidence establishing a genuine issue of material fact.

1    2015, the court in the Underlying Action denied Lexington's motion for leave to intervene, and
2    granted the Ciminis' motion for judicial assignment. *Id.* at 4.
3         As noted, prior to the state court's last action, on April 21, 2015, Lexington filed
4    the complaint in this action.
5    III.   MOTION TO DISMISS
6         A.    Jurisdiction: *Rooker-Feldman* Doctrine
7         A threshold question is whether the *Rooker-Feldman* doctrine applies here, thus
8    barring Lexington's claims and arguments altogether. *See* Mot. at 13–14. Specifically, the
9    Ciminis argue that Lexington is attempting to relitigate the Underlying Action, which is
10   precluded by the *Rooker-Feldman* doctrine. Opp'n at 18. Lexington contends that the *Rooker-*
11   *Feldman* doctrine applies only to the parties to the Underlying Action. Lexington also contends
12   that an insurer is allowed to dispute in federal court its obligation to indemnify its insured as a
13   result of a state court judgment. Mot. at 14.
14        The *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court
15   losers complaining of injuries caused by state-court judgment rendered before the district court
16   proceedings commenced and inviting district court review and rejection of those judgments."
17   *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). The *Rooker-*
18   *Feldman* doctrine does not bar federal actions merely because a party is in privity with a state-
19   court loser. *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam).
20        Here, there is no state court judgment from which Lexington seeks relief. *See R.R.*
21   *Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 974 (9th Cir. 2011). Lexington is not
22   seeking to relitigate the liability of Energetic, against which the state court entered default
23   judgment in the Underlying Action. *See* SUMF No. 123. Instead, the case now before this court
24   concerns whether Lexington is liable to Energetic. *See Johnson v. De Grandy*, 512 U.S. 997,
25   1005–06 (1994) (*Rooker-Feldman* doctrine did not apply to claims not yet litigated).
26   Accordingly, the court finds the *Rooker-Feldman* doctrine inapplicable here.
27
28

B. <u>Standing</u>

Lexington argues the Ciminis lack the capacity to sue as the assignees of Energetic, because Energetic's corporate status was suspended at the time of the assignment on June 30, 2015. Mot. at 3. A suspended corporation, Lexington argues, does not have the capacity to sue, and because assignees are subject only to the defenses valid against the assignor at the time of the assignment, the Ciminis do not have the right to sue. *Id.* The Ciminis contend the judicial assignment in this case differs from voluntary assignment, and Lexington's argument does not apply to judicial assignment. Opp'n at 4. The Ciminis further contend that Lexington's own briefing in the Underlying Action rejected the very argument Lexington makes now. *Id.* Lexington also argues that the defense of lack of standing was not waived. Mot. at 3.

As noted above, on June 30, 2015, the Nevada state court in the Underlying Action denied Lexington's motion to intervene and judicially assigned to the Ciminis Energetic's "insurance policy, rights and benefits purchased from Lexington, including any potential first party action/claims against Lexington, without limitation, Breach of Contract, . . . [and] Breach of the Duty of Good Faith and Fair Dealing . . . ." SACC, Ex. 1, ECF No. 104-1 at 4. Lexington's argument directly contravenes the Nevada state court's order. In California, collateral estoppel precludes relitigation of an issue previously adjudicated when the following elements are satisfied:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*Hernandez v. City of Pomona*, 46 Cal. 4th 501, 513 (2009). First, the state court explicitly assigned the rights of the insurance policies and any first party claims against Lexington to the Ciminis. Second, an order was issued assigning the rights to the Ciminis. Third, the issue of whether the Ciminis have the right to file an action against Lexington was necessarily decided when the insurance policy rights were assigned. Fourth, the state court's decision was final and

on the merits.  Lastly, though Lexington was not a party to the case, because the state court denied its motion to intervene, SACC, Ex. 1 at 4, Lexington was in privity with Energetic. Neither side disputes Lexington was providing a defense for Energetic in the state action. Accordingly, Lexington is precluded from challenging the state court's judicial assignment of rights to the Ciminis here again.

Lexington's motion to dismiss is DENIED.  The court need not reach Lexington's waiver argument.

## IV.     MOTION FOR SUMMARY JUDGMENT

### A.     Legal Standard

Summary judgment is appropriate where the court is satisfied "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A factual dispute is "genuine" where the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Id.*  In other words, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotations omitted).  Thus, for instance, competent testimony by a single declarant may defeat summary judgment though opposed by many other declarants. *United States v. 1 Parcel of Real Prop., Lot 4, Block 5 of Eaton Acres*, 904 F.2d 487, 491–92 (9th Cir. 1990).  When the court looks at the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in . . . [the] [non-movant's] favor." *Id.* at 255.

In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . . ; or show [ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." *Del Carmen Guadalupe v. Agosto*, 299 F.3d 15, 23 (1st Cir. 2002); *see Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).  The court has the discretion in appropriate circumstances to consider materials the parties have not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact.  *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim.  *See James River Ins. Co. v. Schenk, P.C.*, 523 F.3d 915, 923 (9th Cir. 2008).  If a moving party meets its initial burden, the burden then shifts to the opposing party to establish that genuine issue as to any material fact actual exists.  *See Matsushita*, 475 U.S. at 586.  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)).

B.  Discussion

As a preliminary matter, this court's prior order held that California law applies to the breach of contract claim, while Nevada law applies to the breach of the duty of good faith and fair dealing claim.  *See* 2015 Order at 8–10.  With these principles in mind, the court turns first to the breach of contract claim.

1.  Breach of Contract

To prevail on a breach of contract claim, a plaintiff must prove, (1) the existence of a contract, (2) the plaintiff's performance of her obligations under the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff. *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014).  The parties do not contend that the

insurance policies exist, or that damage resulted.  Instead, the parties focus on Lexington's defense that Energetic never fulfilled the SIR and that Energetic breached the contract.  The court first examines the SIR provision.

### a) SIR:  Waiver of Defense?

The threshold question here is whether Lexington waived the right to raise the SIR provision as a defense by defending and settling claims against an insured.  The Ciminis argue that Lexington waived its defenses, including reliance on the SIR, when it defended Energetic without issuing a supplemental right of rescission.  However, contrary to the Ciminis' position, in California, providing a defense under the primary policy does not require a reservation of rights under the excess policy, and will not prevent an insurer from contesting excess coverage.  *See State Farm Fire & Casualty Co. v. Jioras*, 24 Cal. App. 4th 1619, 1637 (1994); *Phoenix Ins. Co. v. United States Fire Ins. Co.*, 189 Cal. App. 3d 1511, 1527–28 (1987).  Accordingly, Lexington did not waive the defense of SIR, and the court turns to the merits of its arguments based on the SIR provision.

### b) Effects of Failure to Satisfy SIR?

Lexington argues that if an insured incurs liability exceeding the self-insured retention (SIR), but does not satisfy the SIR, then an insurer has no duty to pay.  Mot. at 4.  The Ciminis contend there are genuine issues of material fact as to whether the requirement of funding the SIR was ever triggered due to ambiguities in the policy language, the different versions of the SIR, and whether Lexington waived the SIR defense under the Policy terms.  Opp'n at 9 n.2.

#### i) Legal Standards

"Liability insurance policies often contain a 'deductible' or a 'self-insured retention' (SIR) requiring the insured to bear a portion of a loss otherwise covered by the policy." *Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal. App. 4th 1466, 1473–74 (2010) (internal quotations omitted).  "The term 'retention' (or 'retained limit') refers to a specific sum or percentage of loss that is the insured's initial responsibility and must be satisfied before there is any coverage under the policy, "[u]nlike a deductible, which generally relates only to damages, an SIR also applies to defense costs and settlement of any claim." *Id.*  However, "the term 'self-

1  insured retention' or 'retained limit' in an insurance policy can reasonably connote to the insured
2  no more than what is expressly stated in the policy." *Legacy Vulcan Corp. v. Superior Court*,
3  185 Cal. App. 4th 677, 694, 697 (2010) (insurer had duty to defend despite insured's failure to
4  exhaust retained limit where policy "did not state that the duty to defend was limited by the
5  retained limit in any manner").

6  In California, "[i]t is well recognized that self-insured retentions are the equivalent
7  to primary liability insurance, and that policies which are subject to self-insured retentions are
8  'excess policies' which have no duty to indemnify until the self-insured retention is exhausted."
9  *Pac. Emp'rs Ins. Co. v. Domino's Pizza, Inc.*, 144 F.3d 1270, 1276–77 (9th Cir. 1998) (applying
10 California law).  The distinction means that "excess insurers have no duty to participate in the
11 insured's defense until the primary coverage is exhausted." *Ins. Co. of the State of*
12 *Pennsylvania v. Acceptance Ins. Co.*, No. 01-0225, 2002 WL 32515066, at *3 (C.D. Cal. Apr. 29,
13 2002).

14 The Ciminis first argue that the policy is ambiguous as to who can pay the SIR and
15 which SIR applies.  "While insurance contracts have special features, they are still contracts to
16 which the ordinary rules of contractual interpretation apply . . . . The fundamental goal of
17 contractual interpretation is to give effect to the mutual intention of the parties . . . . If contractual
18 language is clear and explicit, it governs." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254,
19 1264 (1992) (citation omitted); *see also AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822
20 (1990) ("The clear and explicit meaning of these provisions, interpreted in their ordinary and
21 popular sense, unless used by the parties in a technical sense or a special meaning is given to
22 them by usage, controls judicial interpretation." (citations and internal quotations omitted)).  As
23 such, the court begins it analysis with the plain language of the SIR.

24                           ii)    Terms of the SIR Policy
25                                  a)  2005-2006 Policy

26 Lexington Policy 1124780, with a coverage period from July 1, 2005 to July 1,
27 2006 contains an SIR that modified the limits of insurance, and the defense and settlement of the
28 coverage set out in the general body of the policy as follows,

9

I. LIMITS OF INSURANCE

The LIMITS OF INSURANCE as set forth in Item 3 of the Declarations shall apply excess of a Self-Insured Retention (hereafter referred to as the Retained Limit) in the amount of:

. . .

$25,000 per claim

And you agree to assume the Retained Limit. The Retained Limit, or any part of it, shall not be insured without our prior written approval.

Silverman Decl., Ex. 1 at 48. In the policy, it is undisputed the words "you" and "your" refer to Energetic, *see* Silverman Decl., Ex. 1 at 7, 47, and the words "we," "us" and "our" refer to Lexington, *see id.* at 7. In other words, Item 3 states that the policy applies only after the SIR amount of $25,000 per claim is satisfied.

II. DEFENSE AND SETTLEMENT – COVERAGE A AND B

. . .

A. WITHIN THE RETAINED LIMIT:

"We" do not have the duty to investigate or defend any "occurrence," claim or "suit" unless and until the Retained Limit is exhausted with respect to that "occurrence," claim or "suit." However, we may, at our discretion and expense, participate with you in that investigation of any such "occurrence" and the defense of any such claim or "suit" that may result.

B. IN EXCESS OF THE RETAINED LIMIT:

1. Once the Retained Limit is exhausted, with respect to any specific "occurrence," claim or "suit," we shall thereafter have the right and duty to defend that "occurrence," claim or "suit."

2. When we have the duty to investigate and/or defend pursuant to B.1. above, we may at our sole discretion, settle any such "occurrence," claim or "suit."

. . .

D. In no event shall you agree to a settlement in excess of the Retained Limit without our prior written approval.

10

> E. There will be no reduction of the Retained Limit because of payment of claims or "suits" arising from claims or "suits" for which coverage is not afforded by the policy.
>
> . . .

*Id.* Thus, the plain language of the policy reads Lexington does not have a duty to investigate or defend a claim until after the SIR amount, also referred to as the Retained Limit, is exhausted for that claim. Energetic cannot agree to a settlement exceeding the amount of the SIR without Lexington's approval, and the SIR will not be reduced regardless of whether the claim is covered by the policy.

### IV. INSOLVENCY

> Your bankruptcy, insolvency, inability to pay, failure to pay, or refusal to pay the Retained Limit will not increase our obligations under the policy. In the event there is insurance, whether or not applicable to an "occurrence," claim or "suit" within the Retained Limit, you will continue to be responsible for the full amount of the Retained Limit before the limits of insurance under this policy apply. In no case will we be required to pay the Retained Limit or any portion thereof.

*Id.* at 49. This section provides that notwithstanding the circumstances facing or created by Energetic, bankruptcy or otherwise, Energetic remains responsible for the SIR. Even where there is insurance coverage, though the provision does not designate whether such insurance is third-party coverage or not, Energetic remains responsible for the full amount of the SIR.

### V. NOTICE PROVISION

> A. You shall immediately notify us in writing of any claim which:
>
> 1. involves serious "bodily injury," including but not limited to, burns, spinal cord injury, amputation, brain damage, loss of eyesight or hearing, a fatality, or any claim which is likely to exceed 50% of the Retained Limit, or for which you have established a reserve (including indemnity and "Allocated Los Adjustment Expense") at or more than 50% of the Retained Limit;[6]

---

[6] "'Allocated Loss Adjustment Expenses' means all fees for service of process and court costs and court expenses; pre- and post-judgment interest; attorney's fees; cost of undercover operative and detective services; costs of employing experts; costs for legal transcripts, copies of any public records, and costs of depositions and court reported or recorded statements; costs and

11

> 2. you receive notice of a "suit" in which the damage demand exceeds the Retained Limit and/or of a "suit" or claim for Punitive Damages . . . .

*Id.* at 50.  Lastly, the policy requires Energetic to notify Lexington in writing of any claim that is likely to exceed 50 percent of the SIR, or if Energetic receives notice of a suit where the damage demand exceeds the SIR or the suit asks for punitive damages.  *Id.*

b)  2006-2007 Policy

Lexington Policy 6761033, with a coverage period from July 1, 2006 to July 1, 2007, contained a similar SIR provision.  In both SIR provisions, the SIR was due on a per "claim" basis.  The 2006-2007 Policy provided further clarification under Section III, stating that,

> If a Retained Limit is shown . . . a per "claim" basis . . . in Section I, LIMITS OF INSURANCE above, [Energetic's] duty to pay for "Allocated Loss Adjustment Expenses" applies separately to each "occurrence" for "bodily injury" or "property damage," . . . .

Silverman Decl., Ex. 2 at 49.  The 2006-2007 Policy also included an additional definition under Section IV, defining claims to also include, "written demand for monetary damages, . . . includ[ing] service of suit or institution of arbitration proceedings against the insured."  *Id.* at 51.  The court finds no material differences relevant to the issues here between the two SIRs as applied to Energetic and its assignees, the Ciminis.  There are no ambiguities creating two different versions of the SIR as a result of two different policies.  Each policy provides the SIR must be satisfied prior to the attachment of Lexington's right and duty to defend a claim.  The Ciminis have not shown any provisions providing for an express "triggering" of the SIR or waiver of the SIR and other policy defenses, nor can the court find any.

In sum, three questions remain for the court in conducting its breach of contract analysis: (1) when does Lexington's obligation arise with respect to the SIR, (2) who can satisfy the SIR, and (3) has anyone satisfied the SIR?

---

expenses of subrogation; and any similar fee cost or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a claim or "suit" against you, or for the protection and perfection of your or our subrogation rights."  *Id.* at 51.  "Allocated Loss Adjustment Expenses" does not include general overhead.  *Id.*

First, the court addresses Lexington's obligation with respect to the SIR. In *Acceptance*, the court held that an insurer's liability is only in excess of the SIR, and that the insured has the responsibility for the SIR. 2002 WL 32515066 at *7. The court based its holding on the evidence of an SIR provision that explicitly stated the coverage under the general policy provision "shall apply in excess of the Self-Insured Retention as stated in this endorsement," and a provision, which provided that the insurer "has the right in all cases, at their own expense, to assume charge of the defense" but "shall not be obligated to advance or pay amounts within the Self-Insured Retention that the Insured may be legally obligated to pay." *Id.* at *4. Here, the SIRs for each coverage period provides language similar to that of the SIR in the *Acceptance* case. *See* Silverman Decl., Ex. 1 at 48–50 & Ex. 2 at 48–50. The SIR provisions at issue also provide that the coverage under the general policy provision "shall apply excess of a Self-Insured Retention (hereafter referred to as the Retained Limit) in the amount of" $25,000. In *Centex Homes v. Lexington Ins. Co.*, 2014 U.S. Dist. LEXIS 164472 (C.D. Cal. Nov. 24, 2014), the court also faced a near identical SIR provision, and found satisfaction of the SIR was required before the insureds were covered by the policy. Here, satisfaction of the SIR provision was required before Energetic, or in this case, its assignees, qualified for coverage under the policy, whichever policy applied.

The court next considers who can satisfy the SIR and whether the SIR has been satisfied. The court agrees with the Ciminis' argument that neither the 2005-2006 SIR nor the 2006-2007 SIR specifically provides that only the named insured, in this case Energetic, could have satisfied the SIR. *See* Opp'n at 15–16. In California, if the insurance policy "is silent or ambiguous as to the source of funding for a[n] SIR, then the ambiguity is resolved in favor of the insured, and the insured need not pay the SIR out of its own funds." *Acceptance*, 2002 WL 32515066, at *5 (citing *Vons Companies, Inc. v. United States Fire Ins. Co.*, 78 Cal. App. 4th 52, 62 (2000)). In *Centex Homes*, the court in reviewing an SIR provision similar to the one here found the provision to be ambiguous as to who can assume the obligation; the court ultimately found the provision did not preclude an additional insured from satisfying the SIR. 2014 U.S. Dist. LEXIS 164472 at *17 (citing *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th

857, 869, *as modified* (Sept. 23, 1998) ("An insurer has a duty to defend him or her against the suit based on the nature and kind of risk covered by the policy, or when the underlying suit potentially seeks damages within the coverage of the policy.")). However, here, there is no dispute as to whether another insured has paid the SIR. Unlike in *Centex*, both parties agree that no one paid the SIR. The Ciminis argued at hearing that the SIR can be fulfilled through a reduction in damages when the default judgment is paid, but Lexington disagrees. In fact, the Ciminis' interpretation would essentially obliterate the SIR provision in the policy. If an SIR limit can be satisfied by the result obtained through litigation, then the words "[w]e do not have the duty to investigate or defend any 'occurrence', claim or 'suit unless and until the Retained Limit is exhausted" would be meaningless. The satisfaction of the SIR is required before Energetic is eligible for coverage under the policies, and the requirement has not been met here. *See Centex*, 2014 U.S. Dist. LEXIS 164472, at *13.

Lexington's motion for summary judgment on Ciminis' breach of contract claim is GRANTED. The court finds it unnecessary to reach the parties' remaining arguments with respect to the Ciminis' breach of contract claim.

2. <u>Breach of the Duty of Good Faith and Fair Dealing</u>

Lexington argues that because there was no breach of contract, there cannot be a breach of implied covenant of good faith and fair dealing. Mot. at 19. It also says the Ciminis cannot show any conscious and deliberate wrongdoings by Lexington. *Id.* The Ciminis contend that under Nevada law a breach of the implied covenant of good faith and fair dealing is not dependent on a breach of contract claim. Opp'n at 15. The Ciminis also argue there is a genuine dispute of material fact as to Energetic's reasonable expectations with respect to Lexington's actions. *Id.* Lastly, the Ciminis argue Lexington acted in bad faith when it did not even attempt to inform Energetic of the scheduling of a settlement conference, not to mention the offers to settle. *Id.* at 16.

Under Nevada law, which governs here, even though there is no breach of contract, a plaintiff "may still be able to recover damages for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels v. Butch Lewis Prods.*, 107 Nev. 226, 232 (1991).

Although the Ciminis argue there is a genuine dispute of material fact as to the reasonableness of Energetic's expectations, they point to no evidence in the record to show such a genuine dispute. "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists . . . ." *Del Carmen Guadalupe*, 299 F.3d at 23.  Parties must "cit[e] to particular parts of materials in the record . . .; or show [ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  A factual dispute is "genuine" where the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Id.*  In other words, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  The Ciminis' general citations to Lexington's answers to their interrogatories, which do not contain fatal admissions, without more are insufficient. *See* Opp'n at 15 (citing Pls.' Ex. 9, ECF No. 122-9; Pls.' Ex. 11, ECF No. 122-11).  As the parties with the burden of proof at trial, the Ciminis must make a sufficient showing to establish every element in their breach of covenant of good faith and fair dealing.

With respect to the argument that Lexington acted in bad faith, the Ciminis point to the fact that Lexington did not inform Energetic of the settlement conference or settlement offers in the Underlying Action.  Opp'n at 16 (citing Shaw Decl., ECF No. 115 ¶ 18).  This argument, however, is a mischaracterization of Lexington's statement in the record.  The full statement, as provided by John Shaw, the senior analyst employed by AIG Claims, Inc., who was the authorized claims administrator for Lexington, provides that he "did not make further efforts to contact Energetic" prior to the settlement conference, because he "believe[d] Energetic would not have sent a representative to the settlement conference."  Shaw Decl. ¶¶ 18–19.  The Ciminis' do not dispute this representation and their sole citation to one excerpt of Mr. Shaw's declaration is insufficient to raise a material dispute as to bad faith.

Accordingly, Lexington's motion for summary judgment on the Ciminis' claim of breach of the duty of good faith and fair dealing is GRANTED.

V.     CONCLUSION

        For the reasons stated above, the court DENIES Lexington's motion to dismiss, but GRANTS Lexington's motion for summary judgment on the Ciminis' counter-complaint. The parties are directed to meet and confer as to which of the thirty-four claims in Lexington's complaint Lexington plans to proceed. The parties are ordered to file a status report on the conclusion of the meet and confer within twenty-one (21) days, advising the court whether they believe a status conference is warranted.

        IT IS SO ORDERED.

DATED: August 31, 2016.

_____
UNITED STATES DISTRICT JUDGE